UNITED STATES of America, Appellee,

v.

Andy DYKE, Appellant.

No. 760, Docket 89–1462.

United States Court of Appeals,
Second Circuit.

Argued Feb. 2, 1990.

Decided April 16, 1990.

Alan R. Kaufman, Buchwald & Kaufman, New York City, for appellant.

Andrew M. Tomback, Asst. U.S. Atty. (Otto G. Obermaier, U.S. Atty., S.D.N.Y., Ira M. Feinberg, Helen Gredd, Asst. U.S. Attys., of counsel), for appellee.

Before OAKES, Chief Judge, KEARSE and FLETCHER [1], Circuit Judges.

OAKES, Chief Judge:

Andy Dyke appeals a judgment of conviction entered on September 14, 1989, in the United States District Court for the Southern District of New York, Charles M. Metzner, Judge, pursuant to a jury verdict finding Dyke guilty of distributing cocaine, in violation of 21 U.S.C. § 841(a)(1) (1988), and

1. Of the United States Court of Appeals for the     Ninth Circuit, sitting by designation.

of possessing cocaine with intent to distribute, in violation of 21 U.S.C. § 841(b)(1)(C) (1988). He also appeals the district court's computation of his sentence. We affirm the conviction and uphold the sentence imposed.

## FACTS

Dyke was arrested on January 25, 1989, for selling seven vials of crack cocaine to an undercover narcotics agent and for possessing with intent to distribute an additional seven vials, which he dropped to the ground after police officers moved in to arrest him. Also arrested that evening was Victor Alvarez, who was identified by the undercover narcotics agent who purchased the cocaine as being the "steerer"— i.e., the individual leading potential customers to the drug dealer. Charges ultimately were dropped against Alvarez.

At trial, Dyke's attorney argued that the police had arrested the wrong man. He based Dyke's defense on the fact that the purchasing undercover agent, in identifying the dealer to the other agents near the scene who arrested Dyke, failed to state that the dealer spoke with a strong Caribbean accent, a feature that Dyke argues is his most identifiable characteristic and would necessarily have been included in any description of him. However, the undercover agent testified at trial that he did not mention the dealer's accent to the arresting agents because the dealer had not spoken to him during the drug transaction. To counter this testimony, the defense sought to introduce into evidence a set of notes taken by a prosecutor who had interviewed the agent on the day of the arrest as well as the magistrate's complaint that had been filed the next day. Both documents indicated that the dealer had asked "How many?" after the agent requested some vials of cocaine. The district court ultimately admitted the magistrate's complaint, but also admitted into evidence, pursuant to the rule of completeness, see Fed. R.Evid. 106, the summary "buy report" prepared by the agent on the night of the transaction. The buy report did not indicate that the dealer said anything to the undercover agent throughout the transaction.

Dyke's attorney at trial also urged the jury to infer from the fact that charges against Alvarez had been dropped that Alvarez was the wrong man, and hence that the police had likewise arrested the wrong man when they arrested Dyke. However, the prosecutor in summation stated to the jury that charges against Alvarez had been dropped not because he was not in fact the person who directed the undercover agent to the dealer, but because the evidence was not quite strong enough to establish conclusively that he was working as a steerer for the dealer rather than simply being a "good samaritan" who knew his way around "the streets." Moreover, the district court instructed the jury:

> This case is being submitted to you solely to determine the guilt or innocence of the defendant Andy Dyke. The fact that Alvarez is not on trial here with Dyke should have no bearing on the charge made against the defendant. Guilt is individual and you are concerned solely with the question of whether the proof justifies a finding by you that the defendant is guilty beyond a reasonable doubt.

The jury found Dyke guilty of distributing cocaine and of possessing cocaine with intent to distribute.

In calculating Dyke's sentence range under the Sentencing Guidelines, the district court added two points to Dyke's criminal history score pursuant to Guidelines section 4A1.1(d), see United States Sentencing Commission, *Guidelines Manual* § 4A1.1(d) (Nov.1989), on the ground that Dyke had committed the offense while under "escape status." The record indicated that Dyke had pled guilty on January 6, 1988, in a Texas state court to the misdemeanor offense of possessing a handgun unlawfully, and had been sentenced to unsupervised probation for one year (with no geographic restrictions) and assessed court costs of $472. Following his failure to pay the court costs, the Texas court on February 19, 1988, had issued a bench warrant for his arrest. Finding that Dyke's sentence was still unsatisfied when he committed the offense at issue in this case because of his failure to pay the Texas court costs and the outstanding bench warrant for his arrest, the district court concluded that his

current crime was committed while he was on escape status and calculated his sentencing range accordingly.

## DISCUSSION

### 1. Conviction

■ On appeal, Dyke argues, first, that the district court erred in admitting the buy report into evidence under the rule of completeness since the document constituted inadmissible hearsay. We find no need to consider whether admission of the buy report was error, for if it was, it did not rise to the level of reversible error. *See* Fed.R. Evid. 103(a). Even assuming that the dealer did ask the undercover agent how many vials he wanted and that admission of the buy report convinced the jury that the dealer had not spoken during the transaction, the agent's failure to note an accent in the dealer's utterance of merely two words casts little doubt on his identification of Dyke as the dealer. Overwhelming evidence indicated that the identification of Dyke was correct, such as the facts that Dyke had in his possession the marked bills given to him by the agent in exchange for the cocaine, and that he dropped seven additional vials of cocaine to the ground during his arrest. Admission of the buy report, even if improper, was therefore harmless.

■ Dyke next challenges his conviction on grounds that his defense was undercut by the prosecution's "disingenuous" and misleading statements discussing why Alvarez had not been tried and by the district court's instruction to the jury concerning the limited significance of the dropped charges against Alvarez. We find that the prosecution's statements constituted fair and measured responses to the defense's speculation about the dropped charges against Alvarez. Moreover, the district court's instruction to the jury was a standard one that simply reminded the jury that it was to decide only the case against the particular defendant on trial. The jury could not reasonably have interpreted the court's statement about Alvarez's absence, especially in the context of the instructions as a whole, as an instruction not to consider Dyke's contention that he was the wrong man.

### 2. Sentence

■ Dyke furthermore argues that the district court erred in increasing his sentence range on the basis of his failure to pay court costs pursuant to a Texas sentence, without first considering his claim of indigency. The Sentencing Guidelines provide that two points should be added to a defendant's criminal history score "if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." *See* United States Sentencing Commission, *Guidelines Manual* § 4A1.1(d) (Nov.1989). The provision reflects the understanding that defendants who have committed their current offense while under another criminal sentence are more "culpable" and likely to be repeat criminals posing a continuing threat to society than are first offenders or defendants whose previous crimes are less recent. *See id.*, Ch. 4, Pt. A, intro. comment.

Interpreting this provision and the Texas sentence against Dyke, the district court concluded that the assessment of court costs was part of Dyke's sentence, and that because Dyke did not pay the court costs, he committed the offense at issue in this case while still "under" the Texas sentence. We agree. Just as a fine constitutes part of a sentence, *see Guidelines Manual* § 4A1.2, comment (n. 4) (indicating that fine is considered a non-imprisonment sentence), so too should an assessment of court costs be considered an element of a criminal justice sentence. Whether or not we consider Dyke to have been under escape status when he committed the offense at issue here, we find that he was under the sentence in Texas for as long as he did not either pay the court costs or follow procedures for having the assessment wiped out.

■ We moreover find no error in the district court's refusal to consider Dyke's claim of indigency. Had Dyke been arrested pursuant to the bench warrant and been found by Texas courts to be unable to pay the court costs through no fault of his own, it is likely that his unsatisfied assessment of court costs would have been converted either into a term of imprisonment or into

alternative punishment, such as community service, as fulfillment of Texas's interest in punishing him for his misdemeanor offense. *Cf. Bearden v. Georgia,* 461 U.S. 660, 671–72, 103 S.Ct. 2064, 2072–73, 76 L.Ed.2d 221 (1983) (although a defendant who makes bona fide but unsuccessful efforts to pay restitution or a fine cannot, by virtue of poverty alone, be deemed more likely to commit future crimes so as to justify imprisonment, the State has a legitimate interest in punishing lawbreakers and may revoke the probation of an indigent defendant if alternative measures less drastic than imprisonment are inadequate to punish or deter the defendant in lieu of the imposed assessment or fine). Because proof of indigency may have allowed Dyke to convert his assessment of Texas court costs into another form of sentence but would not have required Texas courts to wipe out his sentence altogether, we think that Dyke's claim of indigency could not have changed the district court's conclusion that Dyke was under the Texas sentence when he committed the offense at issue in this case.

Judgment affirmed.