**UNITED STATES of America,**

v.

**Paul G. DAVIS.**

**No. FCR 91–22.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

June 24, 1992.

Robert N. Trgovich, Asst. U.S. Atty., Fort Wayne, Ind., for U.S.

John R. Wilks, Wilks and Kimbrough, Fort Wayne, Ind., for Davis.

## SENTENCING MEMORANDUM

WILLIAM C. LEE, District Judge.

This matter is before the court on the disposition and sentencing of the defendant, Paul G. Davis, Cause Number FCR 91–22. The defendant pleaded guilty to one count of mail fraud, in violation of 18 U.S.C. § 1341 on August 28, 1991. The parties have agreed that the 1987 version of the United States Sentencing Guidelines ("the Guidelines", "USSG") are the appropriate version of the Guidelines to apply in this matter. Therefore, the court will apply the 1987 Guidelines in its analysis.

The presentence report has been prepared and the parties have had an opportunity to object to the recommendations therein. The government has accepted the findings and conclusions of the report, while the defendant has submitted five substantial objections. These objections concern the computations regarding "Obstruction of Justice", "Acceptance of Responsibility", "More Than Minimal Planning", "Criminal History Category", and concern a downward departure from the sentence dictated by application of the Guidelines. On June 9, 1992, the court heard testimony and accepted evidence regarding these issues. At that time the court took the matter under advisement. The court now makes the following findings of fact and conclusions of law.

### Obstruction of Justice

■ As his first objection, the defendant opposes a two level sentence enhancement penalty assessed for "Obstruction of Justice". At U.S.S.G. § 3C1.1 the Guidelines dictate a two-level increase for "Willfully Obstructing or Impeding Proceedings". The defendant objects to this assessment on two grounds. First, counsel for the defendant argues that the defendant destroyed records which were relevant to the investigation on the bad advice of defendant's former counsel, and therefore, the defendant should not be assessed this two point penalty. Second, the defendant argues that the erroneous information which the defendant provided to the investigators was so obviously false, that the statements did not mislead the investigators.

As to the first ground, regardless of whether the defendant's former counsel improperly advised the defendant to destroy records relevant to the investigation of the instant offense, Application Note 1.(a) of Guideline § 3C1.1 requires the two level enhancement when a defendant destroys or conceals material evidence. The defendant admits that he willfully destroyed business records which were material evidence of his scheme to defraud.

Next, the defendant argues that the two point penalty should not be assessed because the false information he supplied to the investigators was so manifestly contrived, that the investigators could not have been misled. The "Commentary" to Guideline § 3C1.1 states that, "This section

provides a sentence enhancement for a defendant who engages in conduct calculated to mislead or deceive authorities ... in respect to the instant offense." The government has pointed out that due to the defendant's false statements, the FBI utilized its resources to interview representatives of TMR, Inc., a neoprene sheet rubber supplier in Florida. This interview revealed that the defendant willfully gave false statements during the investigation of the instant offense.

The court finds that the defendant's initial conduct and statements to the investigators regarding the instant offense were calculated to mislead or deceive the investigating authorities, that the investigators were misdirected and expended additional investigatory efforts due to the defendant's conduct, and the defendant destroyed records which were material evidence of his scheme to defraud. Therefore, the two level sentence enhancement is assessed against the defendant.

### Acceptance of Responsibility

■ As his second objection, the defendant argues that he should receive a two level reduction for "Acceptance of Responsibility", pursuant to Guidelines § 3E1.1. The Application Notes to the 1987 version of the Guidelines indicate that the "Acceptance of Responsibility" reduction "is not warranted" when the § 3C1.1 enhancement for "Obstruction of Justice" is assessed. However, the most recent version of the Guidelines recognizes that the two adjustments may simultaneously be applied to "extraordinary cases". Even the 1987 Guidelines version acknowledges that "[t]he sentencing judge is in a unique position to evaluate the defendant's acceptance of responsibility."

The defendant's obstruction of the investigation occurred at a very early time in the history of this case. After the time that the obstruction occurred, yet still at a relatively early stage in this case, the defendant obtained different counsel. Immediately upon retention of present counsel, the defendant ceased his obstructive tactics, and began cooperating with the investigators and the government. Furthermore, the government concedes that after the time of the defendant's early obstruction, the defendant has cooperated and has indicated accountability for his misconduct. Therefore, the government does not object to the defendant's request for this adjustment.

The court finds the logic of the earlier version of the Guidelines flawed. Despite the earlier obstructiveness of the defendant, over the course of this case the defendant has more consistently exhibited acceptance of responsibility for his criminal conduct. The court finds this an extraordinary case where adjustments for obstruction and acceptance of responsibility are warranted, and therefore, grants the defendant's request for a two point reduction for acceptance of responsibility in the instant offense.

### More Than Minimal Planning

■ Third, the defendant objects to the two level recommended sentence enhancement for "More Than Minimal Planning", pursuant to Guidelines § 2F1.1(b)(2). The defendant argues that his crime began as an "accident." The defendant asserts that by way of the "accidental" and undetected overbilling of Georgie Boy, the defendant simply erred by taking illegal advantage of the situation. The defendant maintains the enhancement should not be assessed because he did not concoct an intricate and convoluted scheme to work his fraud. The Guidelines explain that "more than minimal planning" is:

more planning than is typical for the commission of the offense in a simple form. [It] also is deemed present in any case involving repeated acts over a period of time, unless it is clear that each instance was purely opportune. Consequently, this adjustment will apply especially frequently in property offenses.

In an embezzlement, a single taking accomplished by a false book entry would constitute only minimal planning. On the other hand, creating purchase orders to, and invoices from, a dummy corporation for merchandise that was never de-

livered would constitute more than minimal planning, as would several instances of taking money, each accompanied by a false entry.

USSG § 1B1.1 Application Note 1(f).

Accordingly, the Guidelines do not contemplate the necessity of "a convoluted scheme" in order for this enhancement to apply. Rather, for this enhancement the Guidelines contemplate characteristics which are present in this case. This case is a "property offense" involving "repeated acts", phony invoices, and "merchandise that was never delivered". USSG § 1B1.1 Application Note 1(f), *supra*. Despite the defendant's contention that the scheme originated from an accident, it is clear that the scheme quickly developed past that stage, and involved more than minimal planning. Therefore, this two level sentence enhancement is warranted.

### Criminal History Computation

■ As his fourth objection, the defendant complains that the three point assessment for Criminal History, pursuant to Guidelines § 4A1.1 is in error. Specifically, the defendant contests the recommended two point assessment under § 4A1.1(d), which provides: "Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status."

The defendant admits that at the time the instant offense occurred, he was on a one year period of unsupervised probation which was imposed for a misdemeanor charge of criminal conversion by the Noble County Indiana court in March of 1987. However, the defendant argues that the two point assessment does not apply to his unsupervised probation in Noble County because enhancement of a federal sentence for such a lenient county court disposition "is not contemplated by the Guidelines".

The Guidelines do not specifically address the question raised: Whether unsupervised probation is considered "any criminal justice sentence" for application of § 4A1.1(d). However, at § 4A1.2(a), the Guidelines define what the phrase "prior sentence" means for purposes of computing the § 4A1.1 criminal history. That definition provides that prior sentence is "any sentence previously imposed upon the adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere,* for conduct not part of the instant offense." Furthermore, at § 4A1.2(f) the Guidelines indicate that diversionary dispositions which result from findings or admissions of guilt *are counted* as a prior sentence, as opposed to diversionary dispositions which result *without* a finding or admission of guilt.

Although no court in the Seventh Circuit has addressed this issue, in *United States v. Dyke,* 901 F.2d 285, 287 (2nd Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 279, 112 L.Ed.2d 233, the Second Circuit Court of Appeals ruled that unsupervised probation is a "criminal justice sentence" under this Guideline application. There, the court upheld a § 4A1.1(d) two point assessment against a defendant who committed the relevant federal offense when serving an unsupervised probation term. *Dyke,* at 287. In *Dyke,* the Second Circuit held the two point assessment was proper when Dyke committed the relevant offense while on unsupervised probation, even though the period of probation was extended to include the time of that latter offense only because Dyke had failed to pay court costs. *Dyke,* at 287.

However, in a different context, the Seventh Circuit has analyzed the correctness of a two point § 4A1.1(d) assessment. In *United States v. Lee,* 941 F.2d 571, 572 (7th Cir.1991), the Seventh Circuit indicated that this matter turned on whether, under the law of the authority which previously sentenced the defendant to the probationary period (state or federal), that authority retained jurisdiction to revoke the defendant's probation. In *Lee,* the Seventh Circuit ruled that by the time Lee committed his latter federal offense, he ceased to be "under any criminal justice sentence" for the purposes of § 4A1.1(d) of the Guidelines, because Lee's latter offense did not occur until after the State of Missouri's

period of probation had expired, and under Missouri law, the state did not retain the power to revoke Lee's probation. *Lee*, at 572–573. Specifically, the court held that a warrant for probation violations issued before, but not executed until after Lee's five year probationary period expired, did not extend the time Lee was "under any criminal justice sentence" for application of § 4A1.1(d). *Lee*, at 573.

In this case, the defendant was placed on probation in Noble County by authority of the State of Indiana. Indiana law provides that:

The court may revoke a person's probation if:

(1) the person has violated a condition of probation during the probationary period; and

(2) the petition to revoke probation is filed during the probationary period or before the earlier of the following:

(A) One (1) year after the termination of probation.

(B) Forty-five (45) days after the state receives notice of the violation.

I.C. 35–38–2–3(a). Applying *Lee*, the court finds that even though the defendant was on unsupervised probation at the time of the instant offense, pursuant to I.C. 35–38–2–3(a), the State of Indiana maintained the jurisdiction to revoke the defendant's unsupervised probation at that time because the instant offense was committed during the defendant's probationary period. Furthermore, that unsupervised probation sentence resulted from a formal admission of guilt, a factor relevant to the § 4A1.2 determination of whether a previous sanction should be construed as a "prior sentence." Therefore, the court finds that the defendant's Noble County unsupervised probation sentence is a § 4A1.1(d) "criminal justice sentence" previously imposed for conduct not part of the instant offense.

Accordingly, the § 4A1.1(d) two point penalty for committing the instant offense "while under *any* criminal justice sentence" is warranted. This finding is consistent with the Second Circuit's holding in *Dyke, supra,* the Seventh Circuit's holding in *Lee, supra,* and consistent with the policy stated in this section of the Guidelines, which provides that "defendants who receive the benefit of a rehabilitative sentence and continue to commit crimes should not be treated with further leniency." USSG § 4A1.2 Application Note 9. Thus, the court finds the total of the criminal history points for the defendant is three (3), and therefore, the defendant's criminal history category is II.

### Departure

■ Finally, the defendant argues for a downward departure from the sentencing Guidelines. The Guidelines provide the following "Policy Statement" at § 5K2.0, "Grounds for Departure":

Under 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds that 'an aggravating or mitigating circumstance exists that was not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.' ... [T]he court may depart from the guidelines, even though the reason for the departure is listed elsewhere in the guidelines (*e.g.*, as an adjustment or specific offense characteristic), if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate.

Where the applicable guidelines, specific offense characteristics, and adjustments do take into consideration a factor listed in this part, departure from the guideline range is warranted only if the factor is present to a degree substantially in excess of that which ordinarily is involved in the offense of conviction.

USSG § 5K2.0. In discussing downward departure justified by an unusual amount of pre-paid restitution the Seventh Circuit interpreted this section of the Guidelines, declaring:

Under § 5K2.0, the Guidelines allow a court to increase the two-level reduction given the defendant for his acceptance of responsibility if the court determines that 'unusual circumstances' exist *and* the circumstance is 'present to a degree

substantially in excess of that which is ordinarily involved.'

*United States v. Carey,* 895 F.2d 318, 323 (7th Cir.1990) (emphasis added). In *Carey,* the court of appeals remanded to the sentencing court for the determination of the above two findings, which are required to render such a departure "reasonable". *Id.,* at 324.

A defendant's payment of restitution is a factor considered in determining whether a two level reduction for acceptance of responsibility is warranted. *United States v. Garlich,* 951 F.2d 161, 163 (8th Cir.1991); *Carey,* at 323. However, the court may grant a defendant this two level reduction and depart downward from the Guideline range if "the extent and timing of the [defendant's] restitution are sufficiently unusual to warrant a downward departure." *Garlich,* at 163.

The court finds that departure from the Guideline range is warranted because the defendant's acceptance of responsibility is present to a degree substantially in excess of that which ordinarily is involved in the offense of conviction, as manifest by his payment of an extensive amount in restitution. Long before being indicted in the instant offense, as the result of a voluntary settlement in a civil lawsuit, the defendant agreed to pay Georgie Boy $800,000 in restitution. This amount of agreed restitution is at the high end of the amount of the $500,000 to $800,000 loss range to which the defendant and the government agreed. Shortly after reaching the agreed terms of the settlement, the defendant borrowed an initial sum of $300,000, which he paid Georgie Boy as a "down payment" towards the $800,000 amount of restitution. Since that time, the defendant has been paying monthly restitution installments of $25,000. As of this date, the defendant has paid $775,000 in restitution, with only one $25,000 installment remaining to be paid before the defendant has paid the $800,000 restitution in full. In the eleven years the court has sat on this bench, no other defendant has come remotely close to paying such a large amount of restitution prior to sentencing as has this defendant.

The court finds that such a large amount of pre-paid restitution is a circumstance which is highly unusual, and is present in this case to a degree substantially in excess of that which ordinarily is involved in sentencing considerations for similar convictions. Although the defendant's restitution was not paid in full prior to the issuance of the indictment, the court finds that his extraordinary amount of restitution does constitute "super-acceptance of responsibility", which warrants departure. In light of the unusual circumstances of the pre-payment of such a large restitution amount, the court finds that the Guideline level attached to that factor is inadequate. Thus, the court will depart from the Guideline range to impose a reasonable sentence.

Normally, in property offenses such as mail fraud, the Guidelines dictate level increases for the amount of loss, regardless of how much value is returned to the victim. However, in this case, the court finds that based upon the highly unusual $800,000 restitution, a logical and reasonable basis for the extent of the departure from the Guidelines is to eliminate the level increase which would have been assessed for the estimated loss range of between $500,000 and $800,000. The Guidelines' specific offense characteristics criteria indicate the base offense level should be increased by eight (8) levels due to this agreed estimate of the amount of loss. USSG § 2F1.1(b)(1)(I). Therefore, the court will depart from the recommended Guidelines sentence level by decreasing that level by the eight (8) levels assessed for the amount of loss.

### Restitution and Fine

As required, the court has considered the defendant's financial resources, financial needs, and earning ability in considering its order of restitution and fine. *See, United States v. Lashmett,* 965 F.2d 179, 185 (7th Cir.1992). The court's consideration of the defendant's overall financial status is based upon the report of the defendant's financial information as related in the presentence report, upon the testimony at the June 9, 1992 hearing, and upon defendant's "Ex-

hibit A'', a financial statement of the defendant's company, USA Diversified Products, Inc. The presentence report indicates that the defendant reported adjusted gross income exceeding $203,000 for tax year 1989, and adjusted gross income exceeding $115,000 for tax year 1988. Accordingly, the court determines that the defendant is able to pay the remaining amount of his agreed upon restitution, $25,000, due July 1, 1992; that the defendant is able to pay a fine in the amount of $125,000, to be paid in monthly installments of $12,500 commencing August 1, 1992; that the defendant is able to pay the special assessment fee of $50; and that the defendant is able to pay the cost of his community confinement and supervision. The most recent advisory from the Administrative Office of the United States Courts, dated August 7, 1991, suggests that a monthly cost of $991 be assessed for placement in work release community corrections, and that a monthly cost of $115.30 be assessed for probation supervision.

### Sentence

The court now sentences the defendant, Mr. Davis accordingly. By application of the Guidelines, and based on the above findings and conclusions, the court has determined the following:

1) The base offense level for violation of 18 USC § 1341 is level six (6). USSG § 2F1.1.

2) Due to the loss estimate range of between $500,000 and $800,000 agreed to by the government and the defendant, the specific offense characteristics criteria indicate the base offense level should be increased by eight (8) levels. USSG § 2F1.1(b)(1)(I).

3) The offense level is increased by two (2) levels due to the assessment for more than minimal planning. USSG § 2F1.1(b)(2).

4) The offense level is increased by two (2) levels due to the assessment for obstruction of justice. USSG § 3C1.1. Thus, the sub-total offense level is eighteen (18).

5) The sentence is reduced by two (2) levels due to the defendant's acceptance of responsibility. USSG § 3E1.1. Thus, the total offense level is level sixteen (16).

6) The defendant's criminal history computation score is three (3) points. USSG § 4A1.1(c) and (d). This is a result of one (1) point assessed for the defendant's prior Noble County sentence, and two (2) points assessed for committing the instant offense while serving that Noble County criminal justice sentence. Thus, according to the sentencing table, the defendant's criminal history category is II.

7) Based on a total offense level of sixteen (16), and a criminal history category of II, the Guideline imprisonment range is twenty-four to thirty (24–30) months.

8) Applying the above Guidelines departure analysis, and based upon the highly unusual restitution, the court has determined that a reasonable basis for the extent of the departure is that the eight (8) level increase for amount of loss, otherwise required pursuant to the "specific offense characteristics" category, should be subtracted from the total offense level of sixteen (16).

9) Thus, the court will sentence the defendant at a total offense level of eight (8), criminal history category II, which results in a Guideline sentencing table range of four to ten (4–10) months incarceration.

10) The Guidelines permit the imposition of imprisonment, community confinement, probation, or a combination thereof if the sentencing table range minimum term of imprisonment is one to six (1–6) months, as is the case herein.

11) Accordingly, the court now sentences the defendant, Paul G. Davis, to a term of seven (7) months to be served in a work release community confinement facility, as a condition of a twenty-four (24) month period of probation. Upon release from the community confinement facility, the defendant shall serve the remaining seventeen (17) months of his probation term. While on proba-

tion, the defendant shall not commit another Federal, state or local crime; shall not possess a firearm or other dangerous weapon; shall be prohibited from incurring any new credit charges or opening any additional lines of credit without the approval of the probation office unless the defendant is in compliance with the below detailed restitution, fine, and assessment schedule; the defendant shall provide the probation office with access to any requested financial information; shall complete two-hundred (200) hours of community service; and shall comply with the standard general rules of probation as adopted by this court.

12) Additionally, as further conditions of probation, the defendant shall pay a financial obligation of $158,947.10, in addition to the $775,000 amount of restitution previously paid by the defendant. Thus, as a result of his offense, the defendant will have paid restitution, fines, and penalties in the amount of $933,947.10. The financial obligation condition of probation consists, in part, of the final $25,000 monthly installment in the total $800,000 restitution owed to the victim, Georgie Boy, Inc. This final installment of the restitution shall be paid by July 1, 1992. The financial obligation condition of probation further consists of assessments totalling $133,947.10, payable to the United States. The assessments owed to the United States shall be paid by the defendant through the United States District Court Clerk's Office, and includes the following: a special assessment of $50 which shall be paid immediately; a fine of $125,000, which shall be paid at a monthly rate of $12,-500, due on the first day of each month, commencing August 1, 1992; the total $6,937 cost of seven (7) months community confinement, to be paid at a monthly rate of $991, due on the first day of each month during the defendant's community confinement, and the $1,960.10 total cost of seventeen (17) months of probation supervision after the defendant's release from community confinement, to be paid at a monthly rate of $115.30, due on the first day of each month during the defendant's period of probation after release from community confinement. Due to the above detailed fines and assessments, the defendant is not to be assessed the usual work release charge of 25% of his gross income during the seven (7) month community confinement period.

13) The defendant shall surrender to the designated community confinement facility at the direction of the U.S. Probation Office.