**UNITED STATES of America,**
**Appellee,**

v.

**Antonio Jesus CUERO–FLORES, aka "Antonio Jesus Flores–Cuero", aka "Frank Ortiz", aka Jesus Flores Turo–Cuero", Defendant–Appellant.**

**Docket No. 00–1480.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 14, 2001.

Decided Jan. 3, 2002.

Ronald Cohen, New York, NY, for Defendant–Appellant.

Eric Chaffin, Assistant United States Attorney (Emily Berher, Assistant United States Attorney, of counsel, Alan Vinegrad, United States Attorney, on the brief), Office of the United States Attorney for the Eastern District of New York, Brooklyn, NY, for Appellee.

Before CABRANES, STRAUB, and B.D. PARKER, Jr., Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge.

Antonio Jesus Cuero–Flores appeals from a judgment of the United States District Court for the Eastern District of New York (Sterling Johnson, Jr., *Judge*) convicting him upon his guilty plea of having been found in the United States after hav-

ing been deported, in violation of 8 U.S.C. § 1326, and sentencing him to, *inter alia,* a term of imprisonment of 71 months. He challenges only his sentence, claiming that the District Court erred in calculating his Criminal History Category by applying a two-point enhancement for violation of a lifetime special parole term because, Cuero–Flores argues, his special parole terminated when he was deported. We hold, as a matter of first impression in this Circuit, that deportation does not automatically terminate a parole or special parole term. Accordingly, we affirm the judgment of the District Court.

**I**

In 1987, Cuero–Flores was convicted upon his guilty plea of possession with intent to distribute cocaine. He was sentenced to, *inter alia,* a term of imprisonment of 180 months, to be followed by a lifetime special parole term. *See generally United States v. Cuero–Flores,* No. 87–1317, 1988 WL 49789 (2d Cir. Mar.23, 1988) (unpublished summary order). In 1994, after serving his term of imprisonment, Cuero–Flores was ordered deported—over his objection—to his native Colombia.

In 1997, Cuero–Flores—having returned to the United States—was arrested by offi-

cers of the New York City Police Department on cocaine charges. He pleaded guilty in New York state court to cocaine possession and was sentenced to a term of imprisonment of three years.

An Immigration and Naturalization Service agent interviewed Cuero–Flores while he was serving his state sentence, and determined that Cuero–Flores had reentered the United States illegally. Accordingly, Cuero–Flores was indicted on August 12, 1999, for illegal reentry, in violation of 8 U.S.C. § 1326.

■ On April 7, 2000, Cuero–Flores pleaded guilty to the indictment pursuant to a plea agreement. In the agreement, the Government estimated that Cuero–Flores's Offense Level pursuant to the United States Sentencing Guidelines was 21, and that his Criminal History Category was Category III, yielding a range of imprisonment of 46–57 months.[1]

The United States Probation Office for the Eastern District of New York, however, determined that Cuero–Flores's Criminal History Category was Category IV, not Category III, by adding two criminal history points pursuant to U.S.S.G. § 4A1.1(d)[2] beyond those taken into ac-

---

**1.** In this Circuit, the Government routinely informs defendants, in response to our invitation in *United States v. Pimentel,* 932 F.2d 1029, 1034 (2d Cir.1991), as to the likely range of sentences that their pleas will authorize under the Guidelines prior to the Government's accepting plea agreements. As we recognized in *Pimentel,* "the Government is under no legal obligation to provide this information." *Id.* Moreover, the Government's estimate is not ordinarily binding on the District Court. *See generally United States v. Rosa,* 123 F.3d 94, 98–99 & n. 3 (2d Cir. 1997).

In this case, the plea agreement explicitly provided, in the paragraph immediately following the estimated guidelines calculations:

> The Guidelines estimate set forth [in the preceding paragraph] is not binding on the Office [of the United States Attorney], the Probation [Office] or the Court. If the Guidelines offense level advocated by the Office [of the United States Attorney], or determined by the Probation [Office] or the Court, is different from the estimate, the defendant will not be entitled to withdraw the plea.

Plea Agreement ¶ 3.

**2.** Section 4A1.1(d) of the United States Sentencing Guidelines provides that, in determining a defendant's Criminal History Category for sentencing purposes, a court must: "Add

count in the plea agreement, because Cuero–Flores was serving a special parole term at the time of the offense. Accordingly, the Probation Office's Presentence Investigation Report to the District Court recommended a Guidelines range of imprisonment of 57–71 months.

At Cuero–Flores's June 23, 2000, sentencing hearing, he objected to the Probation Office's recommendation that criminal history points added pursuant to Section 4A1.1(d) be included in calculating his sentence, contending that because he had been deported, he had not been serving a special parole term at the time of the offense. The District Court rejected Cuero–Flores's argument and sentenced him to, *inter alia,* a term of imprisonment of 71 months. This appeal followed.

## II

### A.

In 1985, when the conduct underlying Cuero–Flores's original conviction occurred, the penalties for possession with intent to distribute a controlled substance differed from those applicable today. Specifically, 21 U.S.C. § 841(b)(1)(B)—the provision pursuant to which Cuero–Flores was sentenced for the 1987 conviction— provided, in relevant part:

Any sentence imposing a term of imprisonment under this paragraph shall, in the absence of [a prior conviction for an offense punishable by the paragraph], impose *a special parole term of at least 2 years* in addition to such term of imprisonment and shall, if there was such a prior conviction, impose *a special parole*

**2** points if the defendant committed the instant offense while under any criminal justice

*term of at least 4 years* in addition to such term of imprisonment.

21 U.S.C.A. § 841(b)(1) (West 1981) (emphasis added).

Special parole was created in 1970 as "an additional penalty for all drug offenses and was mandatory in all such cases until the Sentencing Reform Act [of 1984 and its subsequent amendments] replaced it with 'supervised release.'" *Urbina v. Thoms,* 270 F.3d 292, 295 (6th Cir. 2001). Special parole terms apply to drug crimes committed before October 27, 1986—the date of the enactment of the Anti–Drug Abuse Act of 1986, Pub.L. No. 99–570, 100 Stat. 3207, which, *inter alia,* replaced all references to "special parole" in the Controlled Substances Act with "supervised release." *See generally Gozlon–Peretz v. United States,* 498 U.S. 395, 111 S.Ct. 840, 112 L.Ed.2d 919 (1991). Special parole differs from regular parole in three respects:

[F]irst, special parole follows the term of imprisonment, while regular parole entails release before the end of the term; second, special parole was imposed, and its length selected, by the district judge rather than by the Parole Commission; third, when special parole is revoked, its full length becomes a term of imprisonment. In other words, "street time" does not count toward completion of special parole . . . .

*Evans v. United States Parole Comm'n,* 78 F.3d 262, 263 (7th Cir.1996). Parole in all its manifestations was abolished by the Sentencing Reform Act of 1984, Pub.L. No. 98–473, Title II, 98 Stat.1987, for offenses committed after November 1, 1987. *See* Sentencing Reform Amendment Act of

sentence, including probation, parole, supervised release, imprisonment, work release, or escape status."

1985, Pub.L. No. 99–217, § 4, 99 Stat. 1728.[3]

### B.

■ Our research reveals no published decision in the federal courts addressing the issue of whether a *special parole term* imposed on an alien for his violation of the pre 1987 narcotics laws terminates upon his deportation. Two circuits, however—the Seventh and the Fifth—have addressed, in published opinions, the issue of whether a *term of supervised release* automatically terminates when an alien is deported. *See United States v. Akinyemi,* 108 F.3d 777 (7th Cir.1997); *United States v. Brown,* 54 F.3d 234 (5th Cir.1995). Both held that deportation does *not* terminate supervised release. *Akinyemi,* 108 F.3d at 779–80; *Brown,* 54 F.3d at 237–39.

Both circuits reached their conclusions after examining the then-applicable versions of 8 U.S.C. § 1252(h)[4] and 18 U.S.C. § 3583(d).[5] The Fifth Circuit concluded that because § 3583(d) expressly permits, as a condition of supervised release, that the defendant be deported and remain outside the United States, a term of supervised release clearly remains in effect after the defendant is deported. *Brown,* 54 F.3d at 238–39. The Court noted:

> Congress would not require that a defendant be deported despite a term of supervised release and at the same time allow for supervised release to be conditioned on the defendant not reentering the United States illegally. If Congress intended for deportation to terminate this sentence, it could have specifically provided for such to occur.

*Id.* at 238. The Seventh Circuit agreed, noting that "[b]oth sections assume that deportation is consistent with the continuation of 'supervised release,'" *Akinyemi,* 108 F.3d at 779, and that "there is no authority for [the] claim that deportation automatically terminates [a] court-imposed sentence [of supervised release]." *Id.* at 780.

We agree with the Fifth and Seventh Circuits' analyses in *Brown* and *Akinyemi* of the then-applicable version of 8 U.S.C. § 1252(h) and 18 U.S.C. § 3583(d). Those analyses, however, are not fully applicable in this case, because here the defendant was serving a special parole term-not a term of supervised release. Although we have noted that supervised release and

---

**3.** Section 235 of the Sentencing Reform Act of 1984 preserves the Parole Commission and the federal parole statutes for a period of time for transition to the new system. *See* Pub.L. No. 98–473, § 235(b)(1), 98 Stat. at 2027, 2032–33. The transition period has subsequently been extended until October 31, 2002. *See* Pub.L. No. 104–232, § 2(a), 110 Stat. 3055 (1996).

**4.** That version of 8 U.S.C. § 1252(h) provided, in relevant part:

An alien sentenced to imprisonment shall not be deported until such imprisonment has been terminated by the release of the alien from confinement. Parole, *supervised release,* probation, or possibility of rearrest or further confinement in respect of the same offense shall not be grounds for deferral of deportation.

(Emphasis added). The Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. No. 104–208, §§ 305(a), 306, 110 Stat. 3009, 3009–598 to –612, moved this provision, with minor modifications not relevant here, to 8 U.S.C. § 1231(a)(4).

**5.** Section 3583(d) provided then, as it does now, in relevant part:

If an alien defendant is subject to deportation, *the court may provide, as a condition of supervised release, that he be deported and remain outside the United States,* and may order that he be delivered to a duly authorized immigration official for such deportation.

(Emphasis added).

special parole are "similar in many ways[,] except that supervised release is administered by the judicial branch and not the Parole Commission," *Strong v. U.S. Parole Comm'n,* 141 F.3d 429, 432 (2d Cir. 1998), and that the "small variations in the way the two programs are handled, and in the entities which handle them, ... are mere 'distinction[s] without a difference,'" *id.* at 433 (quoting *United States v. Robinson,* 106 F.3d 610, 612 (4th Cir.1997)) (alteration in original), there is a non-trivial difference between special parole and supervised release for purposes of this particular case.

■ As noted above, 18 U.S.C. § 3583(d) expressly permits a district judge to require, as a condition of supervised release, that the defendant be deported and remain outside the United States. In contrast, Congress did not expressly authorize *courts* to require that an alien be deported as a condition of special parole, and, therefore, courts were not permitted to impose such a requirement.[6] *See United States v. Hernandez,* 588 F.2d 346, 351–52 (2d Cir.1978); *see also id.* at 351 ("Congress might have given the courts a role in determining deportability. It chose not to, and courts have long recognized the Attorney General's exclusive power to admit or expel aliens...."). Thus, the assumption implicit in 18 U.S.C. § 3583(d) that deportation is consistent with the continuation of "supervised release" is irrelevant in this case.

Nevertheless, we hold that the language in the version of 8 U.S.C. § 1252(h) effective at the time Cuero–Flores committed the offense for which we was sentenced to, *inter alia,* a special parole term and also effective at the time he was deported (now moved to 8 U.S.C. § 1231(a)(4), *see ante* note 4)—which expressly permitted deportation of aliens serving terms of "parole"—embraces both parole and special parole terms. Notably, the statute permits deportation of an alien despite the "possibility of rearrest or further confinement in respect of the same offense." 8 U.S.C.A. § 1252(h) (West 1981). We thus conclude, as that statute strongly suggests, that parole and special parole terms survive deportation and that a deported alien who returns to the United States and violates the conditions of his parole or special parole term faces the "possibility of ... further confinement in respect of the same offense."

In any event, no statute or regulation provides for the early termination of a special parole term absent its revocation pursuant to 21 U.S.C. § 841(c) (1982) (repealed 1984),[7] and there was no court order terminating Cuero–Flores's special parole term in this case. *Cf. Akinyemi,* 108 F.3d at 779 ("But even more important than the implications of [18 U.S.C. § 3583 and 8 U.S.C. § 1252(h) ] is the fact that no statute, court order, or sentencing guideline provides for the termination of the supervised release period."). Accordingly,

---

**6.** We note that no such requirement was imposed as a condition of Cuero–Flores's special parole term. Rather, he was deported—as then authorized by 8 U.S.C. § 1252(h)—by order of the Attorney General.

**7.** Prior to its 1984 amendment, 21 U.S.C. § 841(c) provided:

A special parole term ... may be revoked if its terms and conditions are violated. In such circumstances the original term of imprisonment shall be increased by the period

of the special parole term and the resulting new term of imprisonment shall not be diminished by the time which was spent on special parole. A person whose special parole term has been revoked may be required to serve all or part of the remainder of the new term of imprisonment. A special parole term ... title shall be in addition to, and not in lieu of, any other parole provided for by law.

Cuero–Flores was still serving his special parole term at the time he committed the crime of illegal reentry into the United States.

### III

To summarize:

1.  We hold, as a matter of first impression in this Circuit, that parole or special parole terms do not automatically terminate upon deportation; and

2.  In this case, the District Court properly assessed Cuero–Flores two criminal history points pursuant to U.S.S.G. § 4A1.1(d) for committing the instant offense while under a criminal justice sentence.

Accordingly, the judgment of the District Court is affirmed.