# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1838

_____

United States of America,　　　　　　*
　　　　　　　　　　　　　　　　　*
　　Plaintiff - Appellee,　　　　　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States
v.　　　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　*　District of South Dakota.
Manuel Rodriguez-Arreola,　　　　*
　　　　　　　　　　　　　　　　　*
　　Defendant - Appellant.　　　　*

_____

Submitted: October 8, 2002

Filed: December 23, 2002

_____

Before BOWMAN, RICHARD S. ARNOLD, and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

Manuel Rodriguez-Arreola appeals the sentence imposed by the district court[1] after he pleaded guilty to illegally reentering the United States after a prior deportation in violation of 8 U.S.C. § 1326(a). On appeal, Rodriguez argues that the district court erred in imposing a sixteen-level enhancement for a prior felony conviction under U.S.S.G. § 2L1.2(b)(1)(A), in assigning three criminal history points

---

[1]The HONORABLE LAWRENCE L. PIERSOL, Chief Judge of the United States District Court for the District of South Dakota.

for three other prior convictions, and in failing to apply the beyond-a-reasonable-doubt standard to the fact issue underlying the sixteen-level enhancement. We affirm.

## I.

In late 1990, Rodriguez was convicted in an Oregon state court of unlawful possession and delivery of heroin. He was sentenced to prison for an "indeterminate period" of not less than eight months nor more than five years. He was paroled eight months later and deported in October 1992. Rodriguez illegally reentered the United States in March 2000.

The illegal reentry statute substantially increases the authorized maximum penalty if the illegally reentering alien's prior deportation followed an aggravated felony conviction. See 8 U.S.C. § 1326(b)(2). The Sentencing Guidelines mandate a sentence enhancement to reflect the more serious nature of a § 1326(b)(2) offense. As amended in November 2001, U.S.S.G. § 2L1.2(b)(1)(A)(i) imposes a sixteen-level enhancement if the defendant's prior deportation followed his conviction for "a felony that is . . . a drug trafficking offense for which the sentence imposed exceeded 13 months." The prior version of § 2L1.2(b) mandated the sixteen-level enhancement if the prior conviction was for any "aggravated felony," a term defined in another section of the immigration laws, 8 U.S.C. § 1101(a)(43). See United States v. Tejeda-Perez, 199 F.3d 981, 982-83 (8th Cir. 1999). The 2001 amendment responded to concerns that this term included too many offenses by enacting a sliding scale of enhancements "depending on the seriousness of the prior aggravated felony and the dangerousness of the defendant." See U.S.S.G. App. C., amend. 632. The sixteen-level enhancement in amended § 2L1.2(b)(1)(A) applies to the most serious aggravated felonies, including drug trafficking offenses where the "sentence imposed exceeded 13 months."

Rodriguez admits his 1990 Oregon conviction was for a "drug trafficking offense." The issue on appeal is whether, as the district court concluded, the conviction falls within § 2L1.2(b)(1)(A)(i) because "the sentence imposed exceeded 13 months." The Oregon court imposed an indeterminate sentence of eight months to five years, and Rodriguez was paroled eight months after sentencing. Therefore, he argues the true "sentence imposed" was less than thirteen months. We review this Guidelines interpretation issue de novo. United States v. Gomez-Hernandez, 300 F.3d 974, 977 (8th Cir. 2002).

The commentary to amended § 2L1.2 resolves one potential problem in construing the term "sentence imposed": "If all or any part of the sentence of imprisonment was probated, suspended, deferred, or stayed, 'sentence imposed' refers only to the portion that was not probated, suspended, deferred, or stayed." U.S.S.G. § 2L1.2 cmt. (n.1(A)(iv)). Probation, suspension, and so forth are actions taken at the time of sentencing. Thus, the Application Note tends to confirm that in this guideline, as in federal criminal law generally, the term "sentence imposed" means the sentence reflected in the criminal judgment, not the sentence the defendant ultimately serves. See generally 18 U.S.C. § 3553. Here, Rodriguez's Oregon sentence was not probated, suspended, deferred or stayed -- he was simply paroled after serving the minimum prescribed sentence. The issue presented is one not expressly addressed in § 2L1.2 and its commentary -- whether an indeterminate state court sentence is one "imposed" for the maximum term of the indeterminate sentence, or for some lesser period.

At common law, indeterminate sentences were understood to be "sentences for the maximum term for which the defendant might be imprisoned." Baughman v. United States, 450 F.2d 1217, 1220 (8th Cir. 1971) (quotation omitted). Applying this principle, the "sentence imposed" on Rodriguez by the Oregon court would clearly be the full five-year term, not the minimum eight-month term. This construction fits the Sentencing Commission's purpose in amending § 2L1.2(b)(1)

to isolate the most serious aggravated felony convictions. A drug trafficking offense punishable by a prison term of eight months to five years is more serious than one punishable by a prison term of less than thirteen months.

This common-law understanding of indeterminate sentencing has been consistently applied by federal courts in resolving related Guidelines issues. For example, Application Note 5 of the prior version of § 2L1.2 encouraged downward departures in some instances where "the term of imprisonment imposed" did not exceed one year. Courts read that phrase to mean the maximum term imposed by an indeterminate state court sentence. See United States v. Chavez-Valenzuela, 170 F.3d 1038, 1040 (10th Cir. 1998). Courts likewise read the phrase "term of imprisonment imposed" in Application Note 7 of an earlier version of § 2L1.2 to mean the upper end of an indeterminate sentence. See United States v. Galicia-Delgado, 130 F.3d 518, 520-22 (2d Cir. 1997); United States v. Quinonez-Terrazas, 86 F.3d 382, 383 (5th Cir. 1996). And courts have adopted the same construction in immigration cases applying the phrase "term of imprisonment imposed" in 8 U.S.C. § 1143(a)(43) to indeterminate sentences. See Bovkun v. Ashcroft, 283 F.3d 166, 170-71 (3d Cir. 2002); Nguyen v. I.N.S., 53 F.3d 310, 311 (10th Cir. 1995).

In addition to this uniform judicial authority, the Sentencing Commission expressly adopted this interpretation of an indeterminate sentence in the criminal history chapter of the Guidelines. Section 4A1.1 adds criminal history points for "each prior sentence of imprisonment" that exceeds a particular length. Section 4A1.2(b) then defines "sentence of imprisonment" to mean the "maximum sentence imposed." Application Note 2 to § 4A1.2 provides that, for these purposes --

> the length of a sentence of imprisonment is the stated maximum (e.g., in the case of a determinate sentence of five years, the stated maximum is five years; in the case of an indeterminate sentence of one to five years, the stated maximum is five years . . .).

Pointing to the lack of a specific answer to this question in the amended § 2L1.2 text and its commentary, Rodriguez argues that we should apply the rule of lenity and construe the guideline in his favor. The rule of lenity applies when an ambiguous section of the Sentencing Guidelines may be given either of two plausible readings. See United States v. Pharis, 176 F.3d 434, 436 (8th Cir. 1999). But it does not apply when one interpretation is based on "more than a guess as to what Congress intended," Tejeda-Perez, 199 F.3d at 983. That is the case here. Given the plain meaning of amended § 2L1.2(b)(1)(A)(i), the purpose underlying the November 2001 amendment, and the universal understanding that an indeterminate sentence is the maximum term the defendant may serve, we conclude that the "sentence imposed" on Rodriguez by the Oregon state court was five years for purposes of § 2L1.2(b)(1)(A). Accordingly, the district court properly imposed the sixteen-level enhancement.

## II.

Rodriguez next argues that the district court erred in assessing four criminal history points for two prior Washington State drug convictions because the government failed to prove that Rodriguez committed these offenses. We review the district court's identity finding for clear error. See United States v. Covington, 133 F.3d 639, 642 (8th Cir. 1998).

At sentencing, the government offered into evidence, without objection, certified copies of two convictions of a defendant identified as "Ernesto Resendiz-Villa, a/k/a Pedro Ayala-Alvarado," photographs of "Ernesto Resendiz-Villa" taken at the time of the Washington State convictions and of Rodriguez following his arrest for illegal reentry, and an FBI "rap sheet" purporting to recite Rodriguez's Washington and Oregon criminal history and listing "Ernesto Resendiz-Villa" and "Pedro Ayala-Alvarado" as two of his many aliases. INS Special Agent Gerald M. Coyle testified that he obtained the rap sheet in the ordinary course of his investigation and, to his knowledge, the FBI adds aliases to a rap sheet on the basis

of fingerprint comparisons. The government also offered into evidence two sets of fingerprints of Rodriguez, one taken at the time of the 1990 Oregon conviction and one taken in connection with this offense, and an INS forensic laboratory report that the two sets were made by the same person.

Rodriguez argues that the alias information on the FBI rap sheet was hearsay evidence that lacked sufficient indicia of reliability to be admissible for sentencing purposes. See U.S.S.G. § 6A1.3(a) (courts may consider evidence that might be inadmissible at other proceedings if it has "sufficient indicia of reliability"); United States v. Tucker, 286 F.3d 505, 510 (8th Cir. 2002). Rodriguez suggests that the alias information is unreliable because Agent Coyle had no personal knowledge of the process by which the FBI added the aliases to Rodriguez's rap sheet. However, the alias information was corroborated by the photographs, which the district court found showed the same person, and to a lesser extent by the fingerprint evidence. We conclude the district court did not commit plain error by admitting this evidence nor clear error in finding for sentencing purposes that Rodriguez had committed the Washington State drug offenses.[2]

## III.

Finally, Rodriguez argues the district court committed plain error in not applying the beyond-a-reasonable-doubt standard to the issue of whether his Oregon drug conviction was an aggravated felony for sentencing purposes because the effect of that finding was to increase his statutory maximum sentence from two to twenty years in prison. Specifically, he contends that the Supreme Court decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), "provides reason to doubt the

---

[2]Rodriguez also argues the district court erred in assessing one criminal history point for a 1992 DWI conviction in Washington State. However, counsel conceded at oral argument that subtracting this point would still leave Rodriguez in criminal history category IV, so we need not consider the issue.

durability" of <u>Almendarez-Torres v. United States</u>, 523 U.S. 224 (1998). However, Rodriguez acknowledges that we have previously rejected this argument and explains it is raised "so as to preserve his claim for further review." <u>See</u> <u>United States v. Kempis-Bonola</u>, 287 F.3d 699, 702 (8th Cir.), <u>cert. denied</u>, <u>Bonola v. United States</u>, 123 S. Ct. 295 (2002).[3]

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[3]Concerned that the Supreme Court has noted but not resolved the issue, the district court applied the clear-and-convincing-evidence standard of proof in finding that Rodriguez committed an aggravated felony for sentencing purposes because the issue significantly affected the severity of his sentence. <u>See</u> <u>Almendarez-Torres</u>, 523 U.S. at 248. On appeal, the government does not challenge the court's use of this standard, and we do not consider the issue. <u>See generally</u> <u>United States v. Alvarez</u>, 168 F.3d 1084, 1088 (8th Cir. 1999).