

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-30-2003

# USA v. Frias

Precedential or Non-Precedential: Precedential

Docket No. 02-3688

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation
"USA v. Frias" (2003). *2003 Decisions.* Paper 311.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/311

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed July 30, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-3688

UNITED STATES OF AMERICA

v.

JOSE ANTONIO FRIAS
a/k/a
JOSE ANTONIO FRIA

Jose Antonio Frias,
                    Appellant

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Crim. No. 02-cr-31-1)
District Judge: Honorable J. Curtis Joyner

Submitted Under Third Circuit LAR 34.1(a)
June 23, 2003

Before: SLOVITER, AMBRO, and BECKER,
*Circuit Judges.*

(Filed July 30, 2003)

ELIZABETH T. HEY, ESQUIRE
ELAINE DEMASSE, ESQUIRE
Assistant Federal Defender,
 Senior Appellate Counsel
DAVID L. MCCOLGIN, ESQUIRE
Assistant Federal Defender,
 Supervising Appellate Attorney
MAUREEN KEARNEY ROWLEY,
 ESQUIRE
Chief Federal Defender
Federal Court Division
Defender Association of Philadelphia
Suite 540 West — Curtis Center
Independence Square West
Philadelphia, PA 19106

*Counsel for Appellant*

PATRICK L. MEEHAN, ESQUIRE
United States Attorney
LAURIE MAGID, ESQUIRE
Deputy United States Attorney
 for Policy and Appeals
ROBERT A. ZAUZMER, ESQUIRE
Assistant United States Attorney,
 Senior Appellate Counsel
KRISTIN R. HAYES, ESQUIRE
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106

*Counsel for Appellee*

## OPINION OF THE COURT

BECKER, *Circuit Judge.*

Jose Antonio Frias pleaded guilty in the District Court to a charge of unlawful reentry to the United States after deportation. 8 U.S.C. § 1326. Section 2L1.2(b) of the United States Sentencing Guidelines requires a substantial sentencing enhancement when an alien is convicted of illegally returning to, or remaining in, the United States after the commission of a felony drug trafficking offense. Frias had been convicted in Pennsylvania for such an offense — distributing cocaine — and was sentenced to 11 to 23 months of imprisonment but was paroled shortly after completion of his minimum sentence. Over Frias's objection, the District Court applied the 16 level enhancement in § 2L1.2(b) because it concluded that the term "sentence imposed" in the Guideline means the maximum term of imprisonment in the sentence, which was 23 months.

Frias argues that "sentence imposed" should be construed as the time the alien actually served. For support he looks to Application Note 1(A)(iv) which provides that if any portion of a "sentence of imprisonment was probated, suspended, deferred, or stayed, 'sentence imposed' refers only to the portion that was not probated, suspended, deferred or stayed." The Government contends that the plain language of the Application Note excludes sentences that were paroled, and that the history of the November 2001 amendment to § 2L1.2(b) reflects that the Sentencing Commission considered the "time served" approach and rejected it in favor of the current formulation. Further, the Government notes that federal criminal law generally regards the sentence imposed as meaning the maximum term of incarceration, and that such a definition is used in U.S.S.G. § 4A1.2, the section of the Guidelines concerning the criminal history of recidivists.

We find the Government's interpretation of "sentence imposed" in § 2L1.2(b) to be persuasive. We are satisfied that the District Court correctly construed this term as

meaning the maximum term of imprisonment in an indeterminate sentence. We will therefore affirm the judgment.

## I.

Frias is a native of the Dominican Republic. On May 20, 1999, he was convicted in Pennsylvania state court for distributing cocaine and was sentenced to a term of 11 to 23 months incarceration. The court ordered that Frias serve his sentence in county prison, and that upon the completion of the minimum sentence he "shall be released without a petition upon approval of a suitable parole plan" by the county parole office. After having served slightly less than a year in prison, he was paroled. The Immigration and Naturalization Service then commenced deportation proceedings based on the felony conviction, and Frias was deported from the United States in July 2000.

Acting on a tip, INS agents arrested Frias on January 13, 2002 in Reading, Pennsylvania. He had not received permission to reenter the United States after his deportation. A grand jury empaneled in the Eastern District of Pennsylvania returned an indictment charging Frias with one count of illegal entry after deportation in violation of 8 U.S.C. § 1326. Frias pleaded guilty to the charge. Section 2L1.2 of the Sentencing Guidelines applies to convictions under § 1326 and provides significant sentencing enhancements if the alien was deported after a conviction for drug trafficking. As amended in November 2001, § 2L1.2(b)(1) provides in relevant part:

> If the defendant previously was deported, or unlawfully remained in the United States, after —
>
> (A) a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months . . . increase by 16 levels;
>
> (B) a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or less, increase by 12 levels.

At sentencing, Frias argued that the term "sentence imposed" in § 2L1.2(b)(1) should mean the sentence actually

served. Because he served a sentence less than 13 months in the county jail, Frias submits that he should be subject to the lesser 12 level enhancement. The District Court rejected Frias's reasoning and imposed the greater 16 level enhancement. The Court concluded that the term "sentence imposed" means the maximum term of an indeterminate sentence, relying in part on Chapter 4 of the Guidelines, which deals with criminal history and defines "sentence of imprisonment" as the "maximum sentence imposed." *See* U.S.S.G. § 4A.1.2(b). After granting a three-level reduction for acceptance of responsibility under § 3E1.1, the Court sentenced Frias to a 46 month term of imprisonment.

The District Court had jurisdiction under 18 U.S.C. § 3231 and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's construction of the Sentencing Guidelines *de novo. United States v. Edwards*, 309 F.3d 110, 112 (3d Cir. 2002).

## II.

Section 2L1.2 of the Guidelines was significantly amended in November 2001, in response to criticism that the former version, which required a 16 level enhancement for a prior conviction of an aggravated felony, caused "disproportionate penalties" because of the broad scope of crimes defined as aggravated felonies in 8 U.S.C. § 1101(a)(43) that were incorporated by reference. *See* United States Sentencing Guidelines Manual, Appendix C, Amendment 632. The amendment sought to alleviate this problem by providing a range of sentencing enhancements "depending on the seriousness of the prior aggravated felony and the dangerousness of the defendant." *Id.* For drug trafficking offenses, the amended version of § 2L1.2 requires a 16 level enhancement if the "sentence imposed" was greater than 13 months, and a 12 level enhancement if it was 13 months or less.

Frias's argument that the term "sentence imposed" should be construed to mean the term actually served is based upon Application Note 1(A)(iv) to § 2L1.2, which states that if any portion of a sentence of imprisonment "was probated, suspended, deferred, or stayed, 'sentence

imposed' refers only to the portion that was not probated, suspended, deferred, or stayed." Although he acknowledges that the Application Note does not refer to parole, Frias contends that parole is functionally similar to those categories listed because "the remainder of [a parolee's] term in prison in fact has been deferred, stayed or suspended." Accordingly, Frias submits that the term of his sentence that he did not serve because he was paroled should not count in the Court's computation of the length of "sentence imposed," *i.e.,* for parolees, "sentence imposed" is equivalent to the time actually served.

The Government's response essentially invokes the maxim *expressio unius est exclusio alterius*; it emphasizes that the Application Note to which Frias cites does not include "paroled." To bolster its argument that the Sentencing Commission intentionally omitted parole from the list of actions that restrict the term "sentence imposed" to "time served," the Government examines the history of the 2001 amendment to § 2L1.2. It notes that in January 2001, the Commission published notice of a proposed amendment to § 2L1.2 that would have conditioned enhancement based upon a prior aggravated felony on the time "actually served" by the defendant. 8 Fed. Reg. 7962, 8008-09 (January 26, 2001). The Commission also requested "comment regarding whether the enhancement . . . for a previous conviction for an aggravated felony should be graduated based on a factor other than, or in addition to, the period of imprisonment the defendant actually served for the aggravated felony." *Id.* at 8009.

One of the responses to the Commission's comment invitation came from the Commission's Probation Officers Advisory Group ("POAG"), detailing three objections to the time actually served approach of the proposed amendment, two of which are relevant here. POAG opined that the "time served methodology is contrary to the philosophical underpinnings of Chapter Four" of the Guidelines, which concerns the computation of criminal history. Additionally, POAG submitted that the time served approach might not be a fair measure of severity because of the disparity that results from "varying charging and plea practices, time served in parole- and non-parole systems, alternative

sentences whose custodial component is not the traditional form of incarceration, early releases prompted by prison overcrowding, time served for revocation of supervision, and premature releases to detainers, particularly those in the cases of deportable aliens."

In light of these concerns, POAG recommended that an amendment to § 2L1.2 be based on the "traditional measure of severity, i.e., length of sentence imposed." The final version of the amendment to § 2L1.2 adopted this recommendation in that it utilized a graduated system of sentence enhancements based upon the "sentence imposed" rather than "time actually served." We find this recitation of the history of the amendment to § 2L1.2 highly informative. It points strongly to the conclusion that Frias's general interpretation of "sentence imposed" as time served is not correct, except for the enumerated categories in Application Note 1(A)(iv): suspensions, probations, deferrals, and stays of sentences.

This does not end our analysis, however, because we must still decide the proper interpretation of the "sentence imposed." The Government provides several sources to help in this inquiry. First, the Government, like the District Court, points to Chapter 4 of the Guidelines, which concerns the computation of sentence enhancements for recidivists. Section 4A1.2(b) defines the term "sentence of imprisonment" used in that Chapter as "a sentence of incarceration and refers to the maximum sentence imposed." Application Note 2 to § 4A1.2 further explains:

> the length of a sentence of imprisonment is the stated maximum (*e.g.*, in the case of a determinate sentence of five years, the stated maximum is five years; in the case of an indeterminate sentence of one to five years, the stated maximum is five years; in the case of an indeterminate sentence for a term not to exceed five years, the stated maximum is five years . . .). That is, criminal history points are based on the sentence pronounced, not the length of time actually served.

Frias contends that the reference to Chapter 4 is misplaced because the term "sentence of imprisonment" is not used in § 2L1.2. Furthermore, § 2L1.2 does not refer to

the terms used in Chapter 4, and the Sentencing Commission has cautioned against the appropriation of definitions from other sections. *See* § 1B1.1, Application Note 2 (stating that definitions of terms "are not designed for general applicability; therefore, their applicability to sections other than those expressly referenced must be on a case by case basis"). Finally, Frias argues that the Sentencing Commission is not logically compelled to apply the same definition in these two sections because the prior offense plays a different role in the respective computation process of the two sections.

The Government disputes Frias's conclusion that there is a theoretical difference between Chapter 4 and § 2L1.2, arguing that each section is "clearly aimed at the same thing, which is varying the punishment based on the criminal record and thus the expected dangerousness of the offender." We agree, believing that, while it may not always be appropriate to look at other sections of the Guidelines to interpret a term, such a course is warranted in this case.

This construction is supported by cognate case law. In *United States v. Rodriguez-Arreola*, 313 F.3d 1064 (8th Cir. 2002), the Court of Appeals for the Eighth Circuit looked to Chapter 4 in coming to its conclusion that the term "sentence imposed" in § 2L1.2 means the maximum term of imprisonment. The Court also explained that indeterminate sentences were understood at common law to be sentences for the maximum term for which the defendant might be imprisoned. *Id.* at 1066 (quotation omitted). It is therefore not surprising that this understanding of indeterminate sentences "has been consistently applied by federal courts in resolving related Guidelines issues." *Id.* The Court explained:

> For example, Application Note 5 of the prior version of § 2L1.2 encouraged downward departures in some instances where "the term of imprisonment imposed" did not exceed one year. Courts read that phrase to mean the maximum term imposed by an indeterminate state court sentence. *See United States v. Chavez-Valenzuela*, 170 F.3d 1038, 1040 (10th Cir. 1998). Courts likewise read the phrase "term of imprisonment imposed" in Application Note 7 of an earlier version of

§ 2L1.2 to mean the upper end of an indeterminate sentence. *See United States v. Galicia-Delgado*, 130 F.3d 518, 520-22 (2d Cir. 1997); *United States v. Quinonez-Terrazas*, 86 F.3d 382, 383 (5th Cir. 1996).

*Id.* at 1066-67.

We also used this construction in *Bovkun v. Ashcroft*, 283 F.3d 166, 170-71 (3d Cr. 2002), in which we held that "term of imprisonment" found in 8 U.S.C. § 1101(a)(43) of the Immigration and Nationality Act meant the maximum term for an indeterminate sentence. *Bovkun* is particularly relevant to this case because it supports another component of the Government's argument: that parole is not equivalent to other actions, such as suspension, that result in a shorter sentence served. We noted that "[u]nder Pennsylvania law, the minimum term imposed on a prior sentence merely sets the date prior to which a prisoner may not be paroled." *Id.* at 171 (quoting *Rogers v. Pennsylvania Bd. of Probation and Parole*, 724 A.2d 319, 321 n.2 (Pa. 1999)). We further explained the relevance of parole to the definition of a "term of imprisonment":

Accordingly, petitioner's sentence of 11 to 23 months meant that he had to serve at least 11 months and would not serve more than 23 months. This sentence was functionally the same as a sentence of 23 months, with parole eligibility beginning after 11 months. By contrast, petitioner's sentence was not at all comparable to a simple sentence of 11 months. Under a simple sentence of 11 months, he would have been guaranteed release from prison at the expiration of 11 months, and upon release he would not have been subject to any of the restrictions that commonly accompany parole. We therefore treat the petitioner's sentence for present purposes as if it were a simple sentence of 23 months . . . .

*Id.*[1]

---

1. Frias attempts to dissuade us from applying the logic of *Bovkun* to this appeal by claiming that we misinterpreted Pennsylvania law in that case. He notes that Pennsylvania law provides the Board of Parole jurisdiction only when the maximum sentence exceeds 24 months. *See*

Frias contends that construing "sentence imposed" in § 2L1.2 as the maximum term of the sentence would lead to "illogical results." He cites the supposed disparate treatment of a defendant who receives a sentence of 23 months, of which 20 months is suspended, compared with a person who is sentenced to 23 months and then paroled after three months. Because Application Note 1(A)(iv) to § 2L1.2 states that the suspended portion of a sentence is not included in the definition of "sentence imposed," the former defendant would have a three month sentence and thus qualify for a 12 level enhancement. Parole is not included in the Application Note, however, and thus the latter defendant would be deemed to have had a 23 month sentence imposed and would therefore receive a 16 level enhancement.

The Government disagrees that such a result is illogical and disputes Frias's criticism of *Bovkun*. It contends that in the case of a suspended sentence, "the sentencing judge is making a firm decision at the time of sentencing regarding the amount of imprisonment imposed." In contrast, when providing the opportunity for parole, "the judge is creating the possibility of a longer sentence of imprisonment which is generally ameliorated only by future good conduct . . . [and] there are conditions which attend to parole even after release." We find persuasive the Government's explanation about the distinctive qualities of parole, particularly in view

---

61 Pa. C.S. § 331.17 (stating that powers of Board of Parole do not extend to "persons sentenced for less than two years"). In such situations, the Board may not grant parole before the expiration of the minimum term of the sentence. *See* 61 Pa. C.S. § 331.21. In contrast, when the maximum sentence is less than two years, the sentencing court is free to grant parole without supervision by the Board. *See* 61 Pa. C.S. § 331.26. That is why when Frias was sentenced to a maximum term of 23 months, the sentencing court had the authority to mandate his "release without a petition" upon completion of his minimum sentence of 11 months and approval of a suitable parole plan by the county parole office. We do not find this distinction relevant to the interpretation of "sentence imposed" in § 2L1.2 because regardless of whether the Board of Parole or the state court has the authority to grant parole, Frias was not guaranteed release at the completion of his minimum sentence.

of the fact that the other categories enumerated in Application Note 1(A)(iv) (probation, deferral, and stay) are similar to suspensions and differ from parole in the same way.

For the foregoing reasons, we hold that the term "sentence imposed" in § 2L1.2 means the maximum term of imprisonment in an indeterminate sentence, subject, of course, to the exceptions for probations, suspensions, deferrals, and stays as provided in Application Note 1(A)(iv). Accordingly, we will affirm the judgment of the District Court.

A True Copy:
      Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*