# United States Court of Appeals
## For the First Circuit

No. 03-1553

UNITED STATES OF AMERICA,

Appellee,

v.

MANUEL CARRASCO-MATEO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Selya, Circuit Judge,

Coffin and Cyr, Senior Circuit Judges.

Alexander Zeno on brief for appellant.
H.S. Garcia, United States Attorney, Sonia I. Torres-Pabón and Nelson Pérez-Sosa, Assistant United States Attorneys, on brief for appellee.

November 23, 2004

**SELYA**, **Circuit Judge**. In this appeal, defendant-appellant Manuel Carrasco-Mateo challenges a sentence imposed by the district court in consequence of his guilty plea to a charge of illegal reentry into the United States following an earlier deportation. See 8 U.S.C. § 1326(a). The appellant asseverates that the sentencing court erred in (i) boosting his base offense level by sixteen on account of a prior felony conviction; (ii) adding three points to his criminal history score on account of the same conviction; and (iii) increasing his criminal history score by two more points because he illegally reentered the country while on parole. These asseverations require us to deal with questions of first impression in this circuit as to the meaning and operation of certain provisions of the federal sentencing guidelines. Despite the ingenious nature of the appellant's challenges, we discern no error. Consequently, we affirm the sentence.

## I.

### Background

Because this appeal follows a guilty plea, we derive the facts from the change-of-plea colloquy, the uncontested portions of the presentence investigation report (PSI Report), and the transcript of the disposition hearing. United States v. Brewster, 127 F.3d 22, 24 (1st Cir. 1997); United States v. Dietz, 950 F.2d 50, 51 (1st Cir. 1991).

The origins of this appeal can be traced to the appellant's felony drug conviction in a New York state court, for which he received an indeterminate prison sentence of one to three years on March 15, 2000. The appellant, a Dominican national, served less than a year of that sentence before being paroled into the custody of the Immigration and Naturalization Service (INS) to await deportation. See 8 U.S.C. § 1227(a)(2)(B)(i). The INS deported him to the Dominican Republic on April 25, 2001, notwithstanding that his parole term was to last until January 25, 2003.

We fast-forward to July 18, 2002. On that date, a Coast Guard search of a merchant vessel docked in San Juan uncovered twelve stowaways (including the appellant). After records revealed the previous deportation order, a federal grand jury indicted the appellant on a charge of violating 8 U.S.C. § 1326(a), a statute that makes it unlawful for a previously deported alien to reenter the United States without the express permission of the Attorney General.

The appellant eventually pleaded guilty to the charge. The offense of conviction carried a base offense level of eight. See USSG §2L1.2(a).[1] The PSI Report recommended a sixteen-level

_____

[1]A sentencing court must use the guidelines in effect at the time of sentencing unless doing so would present ex post facto problems. United States v. Harotunian, 920 F.2d 1040, 1041-42 (1st Cir. 1990). The court here utilized the November 2002 edition of the guidelines, without objection from either side. We therefore

enhancement because the appellant had previously been deported following a drug-trafficking conviction for which the sentence imposed exceeded thirteen months. See 8 U.S.C. § 1326(b)(2); USSG §2L1.2(b)(1)(A)(i). This brought the appellant's adjusted offense level to 24. After a two-level discount for acceptance of responsibility, USSG §3E1.1(a), the PSI Report settled upon a total offense level of 22.

Moving to the other furculum of the sentencing grid, the PSI Report recommended the assignment of three criminal history points on account of the appellant's prior conviction, id. §4A1.1(a), and two additional points for illegal reentry while on parole, id. §4A1.1(d). These recommendations produced a criminal history category (CHC) of III. Consequently, the PSI Report suggested that the district court employ a guideline sentencing range (GSR) of 51-63 months. See id. Ch.5, Pt.A (sentencing table).

The district court convened the disposition hearing on March 21, 2003. The appellant argued that he was entitled to a three-level reduction for acceptance of responsibility, see id. §3E1.1(b), instead of the two-level reduction recommended in the PSI Report. The appellant also sought a downward departure, see id. §5K2.0, based on a claim that he had committed the offense of conviction out of impoverished desperation.

---

emulate the district court's example.

The sentencing court agreed with the appellant that he had timely accepted responsibility (and that, therefore, a three-level reduction was in order). This reduction in the offense level yielded a GSR of 46-57 months, based on a total offense level of 21 and a CHC of III. See id. Ch.5, Pt.A (sentencing table). The court refused to depart downward and sentenced the appellant to a forty-six month incarcerative term. This appeal ensued.

## II.

### Discussion

We review a district court's interpretation of the sentencing guidelines de novo and its factual findings for clear error. United States v. Mateo, 271 F.3d 11, 13 (1st Cir. 2001); United States v. St. Cyr, 977 F.2d 698, 701 (1st Cir. 1992). Here, however, the appellant advances on appeal an asseverational array composed wholly of objections that he neglected to raise before the district court. Because of this procedural default, our review is restricted to plain error. United States v. Vazquez-Molina, ___ F.3d ___, ___ (1st Cir. 2004) [No. 03-2655, slip op. at 7]; United States v. Rodriguez, 311 F.3d 435, 437 (1st Cir. 2002). That raises the bar appreciably. To achieve a finding of plain error, a defendant must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness,

integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

Against this backdrop, we turn to the appellant's three assignments of error.

## A.

### Offense Level Enhancement

The sentencing guidelines set a base offense level of 8 for the crime of unlawfully entering or remaining in the United States. USSG §2L1.2(a). The trial court is, however, directed to impose a sixteen-level enhancement "[i]f the defendant previously was deported . . . after a conviction for a felony that is a drug trafficking offense for which the sentence imposed exceeded 13 months." Id. §2L1.2(b)(1)(A)(i). A felony drug-trafficking conviction carrying a lesser sentence triggers only a twelve-level enhancement. Id. §2L1.2(b)(1)(B).

In the case at hand, there is no dispute that the appellant's prior New York conviction was a drug-trafficking felony within the meaning of the applicable guidelines. The appellant argues, however, that the district court erred in treating it as a predicate for a sixteen-level enhancement. His first, and most loudly bruited, claim is that because the appellant served less than thirteen months on the prior conviction, he should have received only a twelve-level enhancement.

-6-

This claim relies heavily on Application Note 1 of the interpretive commentary to the sentencing guidelines. That note provides that "[i]f all or any part of a sentence of imprisonment was probated, suspended, deferred, or stayed, 'sentence imposed' refers only to the portion that was not probated, suspended, deferred, or stayed." USSG §2L1.2, cmt. n.1(A)(iv). The appellant reasons that when New York paroled him into the custody of the INS less than one year into his incarcerative term, it simultaneously delivered him into this comment's welcoming embrace. He thus reads the phrase "sentence imposed" as referring only to the time actually spent in immurement. This reading does not withstand scrutiny.

Our quarrel is not with the text of Application Note 1. The Sentencing Commission's commentary, including the application notes, is binding on the courts as long as it does not conflict either with the sentencing guidelines themselves or with some statutory provision. See Stinson v. United States, 508 U.S. 36, 42-43 (1993); United States v. Piper, 35 F.3d 611, 617 (1st Cir. 1994); see also USSG §1B1.7. The commentary to the sentencing guidelines must, however, be read in a straightforward, commonsense manner. The appellant's reading of Application Note 1 does not pass this screen. It distorts the plain meaning of the phrase "sentence imposed" and, in the bargain, runs counter to a growing consensus of case law. We explain briefly.

-7-

The phrase "sentence imposed" traditionally has meant exactly what the words imply: the punishment meted out by the sentencing court. An offender's early release cannot change the contours of the original sentence imposed after the fact. See Rodrigues v. INS, 994 F.2d 32, 34 (1st Cir. 1993) (collecting cases).

Application Note 1 is perfectly consistent with this reasoning. The enumerated caveats contained in the note — probation, suspension, deferral, and stay — are all judicial options available at the moment of sentencing. See generally 18 U.S.C. § 3553. Parole is a different animal entirely, heavily influenced by post-sentencing events and administered by the executive rather than the judicial branch. See United States v. Frias, 338 F.3d 206, 212 (3d Cir. 2003). Judges are not free to rewrite the sentencing guidelines and, in all events, the inclusion of parole by judicial fiat among the sentencing alternatives delineated in Application Note 1 would be anomalous. In our view, the absence of any mention of parole in the text of the note is a strong indication that the Sentencing Commission intended section 2L1.2's enhancements to reflect the original sentence pronounced, not the time actually served. See United States v. Mendez-Villa, 346 F.3d 568, 570 (5th Cir. 2003) (noting that the plain language of Application Note 1 does not include parole); United States v. Rodriguez-Arreola, 313 F.3d 1064, 1066 (8th Cir. 2002) (holding

that "in this guideline, as in federal criminal law generally, the term 'sentence imposed' means the sentence reflected in the criminal judgment"); cf. 229 Main St. Ltd. P'ship v. Mass. Dep't of Envtl. Prot., 262 F.3d 1, 5-6 (1st Cir. 2001) (presuming that Congress acts deliberately when it excludes from one provision a statutory term it includes elsewhere in the same act).

We add, moreover, that this reading of the phrase "sentence imposed" reinforces an easily discernible goal of the sentencing guidelines: to punish more severely those offenders who previously have received lengthy sentences. The appellant's reading would instead reserve the most severe punishment for those who — because of poor behavior, ill fortune, or the inconsistent operation of parole in the several states — happen to serve more time. There is no reason to believe that the Sentencing Commission had that result in mind. See Rodriguez-Arreola, 313 F.3d at 1066.

To cinch matters, the Commission made its intentions plain elsewhere in the guidelines. Although courts should proceed cautiously in drawing comparisons between guideline chapters, see USSG §1B1.1, cmt. n.2, Chapter Four is particularly instructive as to the interpretive question at issue here. Like section 2L1.2(b), Chapter Four reflects the principle that recidivist offenders should receive sterner punishment. We therefore agree with the Third Circuit, Frias, 338 F.3d at 210, that it is appropriate to

consult Chapter Four in interpreting the phrase "sentence imposed" as the phrase is used in section 2L1.2(b).

Chapter Four states in pertinent part that, in the context of adjustments to a defendant's criminal history score, a prior "sentence of imprisonment" means "the sentence pronounced, not the length of time actually served." USSG §4A1.2, cmt. n.2. Given the similarity of purpose between section 4A1.1 and section 2L1.2(b), we think that it is logical to impute the same meaning to "sentence imposed." See Frias, 338 F.3d at 210; see also United States v. Benitez-Perez, 367 F.3d 1200, 1204-05 (9th Cir. 2004) (holding that a defendant's parole status did not affect the extent of a section 2L1.2 enhancement).

If more were needed — and we do not think that it is — the Sentencing Commission recently amended section 2L1.2 to affirm this precise congruity. See USSG §2L1.2, cmt. n.1(B)(vii) (2003) (explaining that the term "sentence imposed" has the same meaning when used in section 2L1.2 as the term "sentence of imprisonment" when used in section 4A1.2). Even though this amendment post-dates the appellant's offense and conviction, it is relevant here because the Commission characterized this amendment as clarifying rather than substantive. USSG Manual app. C, amend. 658 (2003). Clarifying amendments are considered "purely expository" and, thus, "may be applied retroactively." United States v. Cabrera-Polo, 376 F.3d 29, 32 (1st Cir. 2004). Consequently, this amendment

reinforces our view that the district court properly disregarded the appellant's release on parole in calculating the extent of the enhancement required under section 2L1.2.

Although the appellant does not make it squarely, his argument contains the seeds of a possible second ground for challenging the offense level enhancement. The New York sentence was indeterminate — one to three years — and one might posit that the sentence imposed does not unequivocally exceed the thirteen-month minimum described in section 2L1.2(b)(1)(A)(i). If this were so, the sentence could not support a sixteen-level enhancement. In the last analysis, however, this argument is not convincing.

Chapter Four of the Guidelines Manual once again serves as a useful point of reference. It counsels that "the length of a sentence of imprisonment is the stated maximum." USSG §4A1.2, cmt. n.2. The same note then offers the following example: "in the case of an indeterminate sentence of one to five years, the stated maximum is five years." Id. That is precisely the situation here.

The case law tracks this approach. Where indeterminate sentences are involved, the term "sentence imposed" uniformly has been held, for purposes of section 2L1.2, to mean the high end of the indeterminate range. See, e.g., Frias, 338 F.3d at 212; Rodriguez-Arreola, 313 F.3d at 1067. We endorse this view and hold that, for guideline purposes, a district court should treat a prior

indeterminate sentence as the functional equivalent of a time-certain sentence imposed for the top end of the stated range.

That ends this aspect of the matter.[2]  We conclude, without serious question, that the court below did not err in applying a sixteen-level enhancement pursuant to section 2L1.2(b)(1)(A)(i).

## B.

### Criminal History Calculation

We turn now to the calculation of the appellant's criminal history score.  The nature of the appellant's second and third arguments allows us to address them under one heading.

The appellant's second plaint is essentially an echo of the first.  He contends that the district court erroneously applied USSG §4A1.1(a), which requires the addition of three criminal history points for "each prior sentence of imprisonment exceeding one year and one month."  The appellant reiterates that his actual period of incarceration on the New York drug-trafficking conviction fell short of this mark and maintains that his criminal history category should be recalculated accordingly.  As explained above, the Sentencing Commission's commentary explicitly rejects this

---

[2]The district court had all the information it needed to apply section 2L1.2(b)(1) because the PSI Report accurately recorded the details of the appellant's prior criminal history.  We therefore regard as misdirected the appellant's admonition that the district court may not base its sentencing decision on information not properly before it.

proposed interpretation of section 4A1.1. See USSG §4A1.2, cmt. n.2; see also United States v. Lewis, 40 F.3d 1325, 1344 (1st Cir. 1994) (applying the derived principle). Anything more that could be said on this point would be a redundancy.

This brings us to the appellant's final assignment of error, in which he challenges the awarding of two additional criminal history points. The guidelines call for such an increment "if the defendant committed the instant offense while under any criminal justice sentence, including . . . parole." USSG §4A1.1(d). Applying this directive, the lower court awarded the additional points because the appellant illegally reentered the United States while his New York parole term was still in effect. The appellant challenges this ruling.

For purposes of this guideline, a criminal justice sentence is one "having a custodial or supervisory component, although active supervision is not required for this item to apply." Id. §4A1.1, cmt. n.4. Seizing on the first clause of this statement, the appellant asserts that he was not on parole within the meaning of section 4A1.1(d) when he illegally reentered the country. This assertion rests upon two assumptions: first, that New York law governs the meaning of the word "parole" in this context; and second, that New York relinquished any custodial or supervisory relationship with him when it paroled him into the custody of the INS. Neither assumption holds water.

The definition of a term appearing in the sentencing guidelines is a matter governed by federal law. See United States v. Aymelek, 926 F.2d 64, 71 (1st Cir. 1991). With specific reference to section 4A1.1(d), we have held that whether a defendant is "under any criminal justice sentence" is a federal question. Mateo, 271 F.3d at 15. These authorities are controlling here.

In urging a contrary view, the appellant cites a cluster of cases in which courts have delved into state law to resolve questions arising in the section 4A1.1(d) context. Those cases are readily distinguishable. Each of them involved a defendant laboring under an idiosyncratic state scheme that conferred a status not mentioned in section 4A1.1(d). See, e.g., United States v. Kipp, 10 F.3d 1463, 1467 (9th Cir. 1993) (dealing with deferred sentencing); United States v. Davis, 797 F. Supp. 672, 675 (N.D. Ind. 1992) (dealing with unsupervised probation). These courts turned to state law for guidance in determining whether such schemes carried sufficient custodial or supervisory characteristics to qualify as criminal justice sentences within the purview of section 4A1.1(d). See Kipp, 10 F.3d at 1467; Davis, 797 F. Supp. at 675-76. No similar inquiry is necessary in the instant case because the status at issue here — parole — is explicitly listed in section 4A1.1(d). See United States v. Camilo, 71 F.3d 984, 987 (1st Cir. 1995) (rejecting the proposition that "the Guidelines'

-14-

otherwise unambiguous direction is necessarily qualified by an additional showing under state law"); cf. Conn. Nat'l Bank v. Germain, 503 U.S. 249, 254 (1992) ("When the words of a statute are unambiguous . . . judicial inquiry is complete.") (citation and internal quotation marks omitted). If courts were obliged to tailor the plain meaning of terms used in the sentencing guidelines to accommodate all the legal idiosyncrasies of the several states, that obligation would doom the uniformity and consistency that the sentencing guidelines were designed to foster. See Aymelek, 926 F.2d at 71. Thus, while state law is not always a sentencing irrelevancy, the question here boils down to whether, under federal law, the appellant was on parole when he committed the offense of conviction. See id. at 71-72.

The district court unhesitatingly answered this query in the affirmative, and we agree. The appellant suggests that his term of parole ended when he was deported because New York, by definition, could not exercise custodial or supervisory authority over a parolee living abroad. The appellant cites no authority for this proposition, and immigration law suggests that parole survives deportation. For instance, Congress directed the Attorney General that a deportation action should proceed apace notwithstanding an alien's parole status "or possibility of arrest or further imprisonment." 8 U.S.C. § 1231(a)(4)(A). Implicit in this directive is the understanding that an alien may be deported and

-15-

later face incarceration for violating his parole.  See United States v. Cuero-Flores, 276 F.3d 113, 118 (2d Cir. 2002).  Such a scenario is only possible if deportation leaves an existing term of parole intact.  Id.  The same holds true for supervised release.  See, e.g., United States v. Williams, 369 F.3d 250, 253 (3d Cir. 2004) (explaining that "supervised release is not automatically extinguished by deportation"); United States v. Ramirez-Sanchez, 338 F.3d 977, 980 (9th Cir. 2003) (same); United States v. Akinyemi, 108 F.3d 777, 779 (7th Cir. 1997) (same); United States v. Brown, 54 F.3d 234, 238-39 (5th Cir. 1995) (same).

We find these authorities persuasive here.  Although the appellant is correct that he may not have been subject to the customary level of parole supervision after his deportation, the Sentencing Commission has specified that "active supervision is not required for this [guideline provision] to apply."  USSG §4A1.1, cmt. n.4.  For purposes of section 4A1.1, a term of parole is a term of parole, with or without active supervision.  Ramirez-Sanchez, 338 F.3d at 980.  Accordingly, we hold that, under federal law, deportation does not automatically extinguish an existing term of parole.

We add, moreover, that New York law, insofar as it bears on this discussion, lends no support to the appellant's position. The appellant asserts that when New York paroles an inmate into the custody of the INS, it has washed its hands of the inmate and

-16-

effectively relinquished its custodial and supervisory authority. New York, however, unequivocally reserves to itself "legal custody" of all parolees until the expiration of their parole terms. See N.Y. Exec. Law § 259-i(2)(b) (2004). Thus, if a deported alien returns to New York at any time during the announced term of his parole, the state is free to revoke his parole for cause shown and reinstate the unexpired portion of the violator's incarcerative sentence. People ex rel. Calderon v. Russi, 582 N.Y.S.2d 766, 767 (N.Y. App. Div. 1992) (characterizing the commencement of parole violation proceedings against previously deported alien who returned to the state as "a valid exercise of New York's police power").

There is nothing odd about this configuration. It is well-accepted that "legal custody" may be present when a person is "subject to state-imposed restraints not shared by the public generally." Gonzalez v. Justices of the Mun. Ct., 382 F.3d 1, 5 (1st Cir. 2004) (citation and internal quotation marks omitted). The fact that a deported alien's parole status remains revocable implicates powers of custody and supervision that lie at the epicenter of section 4A1.1(d). See United States v. Lee, 941 F.2d 571, 572-73 (7th Cir. 1991) (considering whether releasing state had jurisdiction to revoke defendant's probation in order to determine the applicability of section 4A1.1(d)); Davis, 797 F. Supp. at 675 (similar). As far as New York was concerned, the

appellant was still serving his parole term when the INS arrested him for illegal reentry.

**III.**

**Conclusion**

We need go no further.  We hold that, with respect to offense level calculations under USSG §2L1.2, the phrase "sentence imposed" refers to the sentence pronounced, not the time actually served; and in the case of an indeterminate sentence, that phrase signifies the maximum term of incarceration under the sentence pronounced.  We also hold that deportation does not automatically terminate an alien's existing parole term or status for purposes of calculating his criminal history score.  Consequently, we find no error, plain or otherwise, in the district court's sentencing determinations.

**Affirmed**.